## TIFFT *vs.* WALKER.

Since the statute of July 3, 1829, providing that no title or estate in fee simple, &c., shall be defeated or encumbered, by any agreement whatever, unless such agreement or writing of defeasance shall be inserted in the conveyance, and become part thereof, &c., an absolute deed with a bond to re-convey, of the same date and executed at the same time, will not constitute a mortgage.

Where a party loaned a sum of money, taking an absolute deed of certain real estate as security, and giving at the same time a bond to re-convey on the payment of the amount, with interest, within a certain time; the parties intending thereby not to make a mortgage—*Held* that the transaction, under the statute of 1829, did not constitute a mortgage—that the agreement operated as a secret trust that the grantee should hold the land, subject to a right in the grantor to redeem and have a re-conveyance—and that the deed was therefore void as against the creditors of the grantor.

A levy of an execution by which a part of a house is taken and set off, is not void, if there is no fraud or oppression.

WRIT OF ENTRY, to recover a farm in Campton.

The defendant pleaded non tenure and disclaimed as to all the premises demanded, except one acre and one hundred and thirty square rods, described thus: "beginning at the south-west corner of the tract set off on execution, Peter Walker *vs.* John H. Tifft; thence south, three degrees west, eight rods, to a stake and stones; thence east, three degrees south, to the house, and through the centre of the chimney to the centre of the chamber stairs; thence south, three degrees west, down the centre of said stairs, and through the centre of the front door, seven rods and six links, to a stake and stones; thence east, three degrees south, sixteen rods, to Samuel E. Johnson's land; thence north, three degrees east, fourteen rods and fifteen links, to a stake and stones, to said Peter Walker's tract; thence west, three degrees north, twenty-two rods, to the first bound."

As to the quantity thus described, he pleaded *nul disseizin;* on which issue was joined.

On the trial, it was admitted that the title to the demanded premises was originally in John H. Tifft, the brother of the plaintiff, Laban Tifft, who offered in evidence the deed of John, to himself, dated October 20, 1834, and recorded

November 15, 1834. The defendant, Samuel H. Walker, then offered in evidence copies of record, showing an attachment of the demanded premises, on a suit in his favor against John H. Tifft, dated January 3, 1835, on which judgment was rendered November term, 1835, and the execution levied upon the land described in the plea. The defendant then offered admissions of the plaintiff, made and sworn to in a disclosure taken in a trustee process against him, November term, 1835, in which he stated that some time previous to the 20th day of October, 1834, he had loaned his brother, John H. Tifft, money at different times, for which he received his notes. That on the 17th or 18th of the same October, John wished him to loan him some more money—that he declined doing it without security, and John proposed to give it by a mortgage on his farm, but he preferred an absolute deed ; and it was at length agreed that he should let John have, in addition to what he had already loaned him, enough to make five hundred dollars, take a deed of his farm, and give him an obligation to re-convey the farm upon re-payment of the money, and interest, in the space of two or three years, he could not say which—that he paid John, at that time, nearly three hundred dollars, in money, which, with the amount due on the notes, made just five hundred dollars—that he had not seen the obligation he gave John, to re-convey, since it was given, and could not say how long time it gave to re-pay the money ; but it was expected that John would pay him when he sold the drove of cattle, for the purchase of which he wanted the money—that he had not seen John since that time—that John requested him to let the deed lie until he came back, and if he then paid the money it would not be necessary to record it, and, he thought, requested it kept from the records lest it should alarm his creditors.

The defendant contended on this evidence that there was a secret trust, existing at the time of the conveyance from John H. Tifft to the plaintiff, which in law, if not in fact, was fraudulent, and rendered the conveyance invalid as against creditors.

The plaintiff objected to the levy under which the defendant claims, that it cut up and injured the premises, &c., and was in other respects defective.

A verdict was taken for the plaintiff, by consent, to be sustained, or set aside and a verdict entered for the defendant, according to the opinion of this court upon the foregoing case.

*Bell, & Bellows,* for the plaintiff.

*Bartlett, & N. P. Rogers,* for the defendant.

PARKER, C. J. It appears in this case, from the admissions of the plaintiff, made in a disclosure taken in another suit, that previous to the 20th of October, 1834, he held several notes against his brother, John H. Tifft, and that John had requested the plaintiff to loan him more money, which the plaintiff declined doing without security; whereupon John proposed to give him a mortgage of his farm—that the plaintiff preferred an absolute deed—and that it was agreed that the plaintiff should let John have money enough to make up the sum of five hundred dollars, take a deed of his farm, and give an obligation to re-convey the farm, upon re-payment of the money, and interest, in the space of either two or three years. The plaintiff says he paid his brother, at that time, nearly $300, in money; but he added that he could not say how long the obligation gave his brother to repay the money, but it was expected he would pay him when he sold the drove of cattle, for the purchase of which he wanted the money.

It is evident from this, that the parties did not intend to make a mortgage, and fail to do so by some mistake respecting the mode of constructing the conveyance. The plaintiff declined to take a mortgage, and preferred an absolute deed, and must have understood that the bond he gave was not to operate so as to constitute the transaction a mortgage.

The statute of July 3, 1829, provides that no title or es-

Tifft *v.* Walker.

tate in fee simple, in tail, &c., " shall be defeated or incumbered by any agreement whatever, unless such agreement or writing of defeasance shall be inserted in said conveyance, and become part thereof, stating the sum or sums of money to be secured, or other thing or things to be performed."— *N. H. Laws* 488. The operation of this statute upon the transaction between the plaintiff and his brother was to give the plaintiff an absolute title, and this was precisely what the parties intended. *Ante* 64, *Bassett* vs. *Bassett.*

The next question is, not whether the bond might not be an agreement, as between the plaintiff and his brother, on which the plaintiff would be liable in damages if he refused to re-convey on the tender of the money ; but whether there was in truth any reservation of a right to John H. Tifft, by the agreement of sale, in the nature of a trust, inconsistent with the purport of the deed by which the land was conveyed to the plaintiff. In other words, whether there was a secret trust ; and this depends upon the question whether this was in fact intended as an absolute sale of the property to the plaintiff, or whether the conveyance was intended to secure the plaintiff for a loan of money.

The plaintiff was applied to for a loan. He declined, without security, but preferred not to take a mortgage. It was agreed that an absolute deed should be given. He gave a bond to re-convey on the re-payment ; and although he speaks, in his disclosure, of paying his brother, he immediately speaks of the time given his brother to pay him.

The court would not be astute in drawing conclusions, unfavorable to the plaintiff's case, from particular expressions in his disclosure, or any form of phraseology ; but it is evident from the whole transaction, as disclosed by the plaintiff, that there was in fact an addition to the loan previously existing—that the conveyance was taken as security for the re-payment of the money, and that the true transaction between the parties, had it been reduced to writing, was a mortgage.

John H. Tifft in fact retained a right by the agreement, if it was performed, to have the land back again, on the payment of the money and interest; and, but for the statute of 1829, the transaction would have constituted a mortgage, notwithstanding the parties did not intend it as such. John H. Tifft was to have, by the agreement, a right of redemption, for a certain time. But this does not appear in the deed, and the obligation he took was not recorded. It was not in the contemplation of the parties that it should be recorded. Nor is it by any means clear that it would have made any difference if it had been, as, under the statute of 1829, the bond could not operate as a defeasance.

There was, therefore, a secret trust that the plaintiff should hold the fee, subject to the right of John H. to redeem. It does not change the nature of the case, that this trust could not have been enforced at law. Damages might have been recovered, if the plaintiff had refused to fulfil it, and a specific performance might, perhaps, have been enforced in equity; but it is not necessary, in order to render a conveyance void, as to creditors, on account of a secret trust, that the grantor should have any remedy by legal process. If he trusts entirely to the honor of the grantee to perform the agreement, the result is the same.

In *Smith* vs. *Lowell*, 6 *N. H. Rep.* 67, the court held that an absolute conveyance, made for the purpose of securing a debt, with an understanding between the parties that the land is to be re-conveyed upon payment of the debt, is void as against creditors; and this decision was confirmed in *Winkley* vs. *Hill*, 9 *N. H. Rep.* 31, cited in the argument for the defendant.

In Smith *vs.* Lowell the court say, if the conveyance was intended only to secure the debt, that intent should have appeared in some writing, made at the time. But by this the court must have intended some writing to be put upon the record, and operate as notice; for if the writing was merely to be deposited in the pocket of the party, and not placed

Tifft *v.* Walker.

upon the record, the secret understanding, or interest not apparent upon the face of the deed, which vitiates the transaction, would still remain, and the creditors be equally defrauded.

If the parties to this conveyance had executed a mortgage, the creditors of John H. Tifft might have levied upon the equity of redemption, and thus have appropriated his interest in the land to the discharge of their demands. But by the course adopted, if the deed to the plaintiff was held to be valid, the creditors would be wholly without remedy, whatever might be the value of the premises over and above the sum advanced by the plaintiff; because, notwithstanding the sale, as between the parties to it, was not absolute, no right of redemption was retained which the creditors of John H. Tifft could attach, or sell upon execution. As the deed cannot be held to be a mortgage, it must be absolute, as it purports to be, or it must be entirely void.

We are constrained to hold, therefore, that the conveyance was, for these reasons, void as against creditors.

The objections to the defendant's levy cannot prevail. There is no evidence upon this subject, except what appears on the face of the levy itself; and it cannot be inferred, from any thing which appears there, that the party, or the officer, or the appraisers, were guilty of any fraud or misconduct. There is nothing to show that it was not necessary so to levy, and there can be no doubt that a creditor may lawfully cause a part of a house to be set off, in satisfaction of his execution. 8 *Mass. R.* 418, *Taylor* vs. *Townsend;* 4 *Green. R.* 165, *Buck* vs. *Hardy.*

*Judgment for the defendant.*